UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**FODE LAYE KOUROUMA #A096-151-270**   CASE NO.  6:18-CV-01150 SEC P

**VERSUS**   JUDGE SUMMERHAYS

**WARDEN**   MAGISTRATE JUDGE WHITEHURST

### REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (28 U.S.C. § 2241) filed by pro se Petitioner Fode Laye Kourouma. Petitioner is an immigration detainee in the custody of the Department of Homeland Security/Bureau of Immigration and Customs Enforcement (DHS/ICE), housed at the Pine Prairie ICE Processing Center. Petitioner challenges his continued detention under the Constitution and laws of the United States.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

*Procedural History*

Petitioner is a native and citizen of Liberia.  He entered the United States on or about July 28, 2002, without inspection.  Petitioner was convicted of forgery and on July 28, 2008, a final order of removal was issued by an immigration official.

[Rec. Doc. 14-1, ¶ ¶ 3, 4] On June 4, 2010, the Board of Immigration Appeals dismissed his appeal of the final order. *Id*. at ¶ 5. On July 13, 2017, Petitioner was taken into ICE custody and a travel document was requested on July 18, 2017. *Id*. at ¶ ¶ 6, 7. A Decision to Continue Detention was issued on October 2, 2017. *Id*. at ¶ 8. A subsequent Decision to Continue Detention was issue on February 2, 2018, which provided that ICE was working with the Government of Liberia to secure a travel document for his removal. *Id*. at ¶ 8; Rec. Doc. 14-2.

Interviews with the Liberian Consulate were conducted on February 20, 2018, and April 6, 2018. *Id*. at ¶ 10. Decisions to Continue Detention were issued on April 23, 2018 [Rec. Doc. 14-3], July 24, 2018 [Rec. Doc. 14-4] and October 10, 2018 [Rec. Doc. 14-5], stating that ICE was working with the Government of Liberia to secure a travel document for his removal.

According to Robert B. Gentry, Jr., the Deportation Officer with the U.S. Immigration and Custom Enforcement (ICE) facility at Oakdale, Louisiana, the delay in the issuance of travel documents is caused by Kourouma's providing unverifiable information to the Embassy during his interviews. *See* Gentry Declaration, Rec. Doc. 20-1. Kourouma advised the Consulate that he used a false French passport to enter the United States, which he claims he subsequently returned. *Id*. Gentry states that he has checked all the databases to which he has access and has not found any record of Petitioner's entering with a false passport,

but because he provided this information, the Embassy has to investigate and, thus, the process is delayed. *Id*.

ICE does, however, possess verifiable information and has copies of two Liberian Passports. *Id*. The Liberian Consulate was provided a copy of the Liberian passport which was in Petitioner's A-file. In an email dated November 30, 2018, Gentry was informed that the Embassy was contacting the Ambassador for further review and issuance of travel documents. *Id*.; *see also* Rec. Doc. 20-2.

### *Law and Analysis*

Petitioner alleges that he has remained in ICE custody beyond the presumptively reasonable 6-month post-removal order period set forth in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) and that it is unlikely that he will be deported to Liberia in the reasonably foreseeable future.

This Court, however, agrees with the Government's assertion, and finds that the documentation provided bolsters the claim, that any delay in the removal of Petitioner is due to his own actions. The statute applicable to the detention of aliens under final orders of deportation, 8 U.S.C. § 1231(a)(1(A), and, thus, applicable to Petitioner, provides that the Attorney General has 90 days after an order of removal becomes final in which to effect an alien's removal. Although ICE has 90 days to remove an alien after he is ordered removed under 8 U. S. C. § 1231 (a) (1) (A), the Supreme Court has held that § 1231 permits the detention of criminal aliens beyond

90 days, for a period reasonably necessary to bring about that alien's removal from the United States. Pursuant to *Zadvydas*, detention for up to six months after the removal order becomes final is "presumptively reasonable." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

After six months, however, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for the detention to remain reasonable, as the period of post removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In the case at bar, Petitioner's failure to cooperate with the efforts to remove him tolled the running of the removal period and also precludes him from asserting a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Benn v. Bureau of Immigration and Customs Enforcement*, 82 F. App'x 139, 140 (5th Cir. 2003) (holding that alien's incomplete and conflicting statements to the INS hampered removal efforts and thus extended removal period); *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he detainee

cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.")  Petitioner has hampered his removal and, thus, cannot challenge his continued detention.

Further, Petitioner cannot establish that he cannot be removed in the reasonably foreseeable future. The delay in the issuance of a travel document is a result of his inconsistent statements regarding his arrival to the United States. *Pelich v. I.N.S.*, 329 F.3d at 1061("We therefore join the existing chorus of courts and hold that an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with . . . efforts to remove him); *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)("We conclude that 8 U.S.C. § 1231(a)(1)(C) . . . authorizes . . . continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents).  The case comments from the database "ENFORCE Alien Removal Module" (EARM), filed by the Government further support its position that Petitioner hampered his own removal and that he cannot establish that he cannot be removed in the reasonably foreseeable future.  Case notes read:

> Spoke to HQ RIO and we need a new swnstmt regarding entry. Specifically need to know if he used a French PP. Liberia is hesitant to issue TD until this is resolved.[1]

---

[1] Rec. Doc. 21-1, p. 2, entry dated October 5, 2018.

> Spoke to HQ RIO – Need more in depth swnstmt in regards to entry. Liberia is not willing to issue TD because alien claimed different citizenship at entry. New SWNSTMT routed for svc.[2]

A January 18, 2019 entry from the same document reads:

> No update from Liberia on TD. As per HQ RIO, good likelihood of issuance in near future.

Finally, the latest entry, dated April 9, 2019, reads, "From HQ RIO: No update yet on TD."

"[T]he risk of indefinite detention that motivated . . . *Zadvydas* does not exist when an alien is the cause of his on detention." *Pelich*, 329 F.3d at 1060. This Court finds that Petitioner's continued detention is due to his own actions precluding removal and, as such, he cannot establish that his continued detention is unconstitutional.

Accordingly,

**IT IS RECOMMENDED** that this petition for writ of *habeas corpus* be **DENIED AND DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days

---

[2] Rec. Doc. 21-1, p. 2, entry dated October 23, 2018.

6

after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE in Chambers on this 29th day of April, 2019.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE